**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MDB LLC d/b/a GreenPearl Events,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **SANDY HUSSAIN, an individual,** <br><br> **Defendant.** | **Civil Action No.** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**TEMPORARY RESTRAINING ORDER AND**
**ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

Richard P. Jacobson (RJ-2843)
Colucci & Umans
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Email:  rjacobson@colucci-umans.com

Attorneys for Plaintiff,
MDB LLC d/b/a GreenPearl Events

Of Counsel:

Russell E. Adler
Law Offices of Russell E. Adler PLLC
370 Lexington Avenue, Suite 1012
New York, New York 10017
russ@radlerlawpllc.com
work: 212.867.9711
mobile: 917.913.6151
fax: 888.636.2303

## INTRODUCTION

Pursuant to *Fed. R. Civ. P.* 65, plaintiff, MDB LLC d/b/a GreenPearl Events ("GreenPearl"), respectfully submits this memorandum of law in support of its application for a Temporary Restraining Order and Order to Show Cause for Preliminary Injunction to restrain defendant Sandy Hussain ("defendant" or "Hussain") from using FASHION DIGITAL as a trademark for conference services and holding herself out as the provider of such services under the FASHION DIGITAL mark.  Because GreenPearl only recently learned that defendant has been contacting GreenPearl's customers of FASHION DIGITAL conferences services and events claiming to control the mark and creating tremendous confusion, GreenPearl also seeks a temporary restraining order against these representations.  A TRO is critical because defendant is communicating on a daily basis with GreenPearl's consumers and causing actual confusion that is harming the FASHION DIGITAL mark.  GreenPearl further seeks limited expedited discovery, pursuant to *Fed. R. Civ. P.* 26, to aid in the resolution of this motion and to determine the nature and extent of defendant's improper conduct.

## FACTUAL BACKGROUND[1]

Defendant has embarked upon a deliberate and intentional course of conduct to steal GreenPearl's successful FASHION DIGITAL trademark by creating confusion and deception among the thousands of people that have attended GreenPearl's FASHION DIGITAL conferences.  Although the defendant, in her role as an independent contractor to GreenPearl, helped GreenPearl produce the conferences, defendant – despite GreenPearl having terminated her services – is operating under the erroneous belief that she somehow acquired rights to

---

[1] The facts forming the basis for this application are set forth in detail in the accompanying Declarations of Ryan Slack, Vivian Bakal and Richard Jacobson.

GreenPearl's valuable FASHION DIGITAL trademark.  Quite simply, this is not possible under the law or under standard business practices.

The FASHION DIGITAL trademark was and is a GreenPearl asset and inextricably intertwined with GreenPearl's conference services provided under this trademark.  Since GreenPearl launched its series of FASHION DIGITAL conferences in 2012, the programs have been quite successful.  (Slack Decl., ¶ 4)  GreenPearl has now organized six FASHION DIGITAL conferences across three cities and is planning to expand into other cities and countries.  (*Id.*)

Defendant is engaged in a scorched-earth policy to wrest control of GreenPearl's FASHION DIGITAL conferences, foment confusion among the relevant consumers of these conference services and harm the reputation of GreenPearl's CEO, Ryan Slack.

Among other things, defendant has contacted untold numbers of sponsors of and past participants in the FASHION DIGITAL conferences claiming to be the owner of FASHION DIGITAL and the "proprietary rights" thereto.  Defendant's unauthorized communications to GreenPearl's clients and false claims of ownership to sponsors and other consumers of GreenPearl's FASHION DIGITAL conference services have caused and are continuing to cause actual confusion.  For example, just this morning, defendant sent an email blast to untold numbers of GreenPearl's sponsors in connection with a competing "Fashion Digital" conference in Los Angeles on May 6, 2015 for which defendant is seeking sponsors.  Within a short period of time, at least two of these unauthorized communications resulted in misdirected emails to GreenPearl.  (Slack Decl., ¶ 79.1 & Ex. 22-23)  Defendant's communications are causing consumers to erroneously believe they are dealing with the genuine source of the successful

FASHION DIGITAL conferences, when, in fact, defendant has no current or ongoing affiliation with or connection to the true source of the FASHION DIGITAL services.

Another previous sponsor, SheerID, expressed concern and confusion to GreenPearl about defendant's activities on November 14, 2014.  By Monday, November 17, 2014, this company withdrew its sponsorship and requested a refund of the $10,000 it had paid.  (Slack Decl., ¶ 73 & Ex. 17)  Other sponsors are asking, literally, "Who is managing the show?" "What's going on over there? Lot's of emails about who owns FD. Who actually owns it?" all of which are "unsettling."  (Slack Decl., ¶¶ 75-78 & Ex. 18-20)

As a result, longtime sponsors and participants in GreenPearl's FASHION DIGITAL conferences are holding off on registering for future events, all to the significant detriment of GreenPearl and the goodwill of its FASHION DIGITAL mark.

By claiming to act on behalf of FASHION DIGITAL, defendant is using GreenPearl's valuable trademark without its authorization, resulting in confusion and irreparable harm to its reputation as the source of the FASHION DIGITAL conferences.  By intentionally and unlawfully sowing confusion through the unauthorized use of the FASHION DIGITAL trademark, defendant is engaged in unfair competition, false advertising, and trademark infringement and dilution, which significantly impair the commercial value of the brand that GreenPearl has built since 2012.  In addition, defendant is tortiously interfering with GreenPearl's contracts and prospective business advantage and engaging in unlawful deceptive practices by falsely claiming exclusive control over the FASHION DIGITAL mark.

GreenPearl sent a cease and desist letter to on November 11, 2014.  (Jacobson Decl., ¶¶ 3-7 & Ex. 1)  Other than criticizing the fact that the letter was sent on Veterans' Day, no substantive response has been provided.  (*Id.*, ¶¶ 8-10 & Ex. 2-4)  Meanwhile, unknown to

GreenPearl at that point in time, defendant had already commenced a state court action against GreenPearl and its CEO Ryan Slack, personally, in New York Supreme Court, Kings County, Index No. 510283/14 ("the State Court Action"), on November 3, 2014, seeking, among other things, the appointment of a receiver for control over the purported FASHION DIGITAL business.   (Slack Decl., ¶ 6)  Furthermore, on November 10, 2014, defendant filed an order to show cause in the State Court Action returnable on November 26, 2014.  (*Id.*)  The State Court Action, however, does not have any direct bearing on the trademark rights at issue in this federal action because those fall within the exclusive jurisdiction of this Court.

As a result, if the relief sought herein is not granted, GreenPearl will suffer irreparable harm.  Based upon GreenPearl's likely success on its claims, the balance of equities strongly weighing in favor of GreenPearl, and the absence of any public harm if a preliminary injunction is granted to GreenPearl and the existing and ongoing irreparable harm to GreenPearl, this Court should grant immediate injunctive relief.

## ARGUMENT

## I.   GREENPEARL IS ENTITLED TO A PRELIMINARY INJUNCTION

### A.   Standard on a Motion for Preliminary Injunction

The primary purpose of a preliminary injunction is to maintain the status quo or the relative positions of the parties until the court can hold a trial on the merits. *See, e.g., Roswell Capital Partners LLC v. Alt. Constr. Techs.*, No. 08 Civ. 10647 (DLC), 2009 U.S. Dist. LEXIS 7690, at *27 (S.D.N.Y. Jan. 30, 2009); *Clinique Labs., Inc. v. DEP Corp.*, 945 F. Supp. 547, 550 (S.D.N.Y. 1996).

To obtain a preliminary injunction in the Second Circuit, a party must demonstrate (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the

merits to make them a fair ground for litigation" and (2) a likelihood of irreparable injury in the absence of an injunction. *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)); *US. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539-40 (S.D.N.Y. 2011) (applying *Salinger*, a copyright case, to trademark case).

In addition, the moving party must also demonstrate that the balance of hardships is tipping in its favor and "the public interest would not be disserved" by the issuance of the preliminary injunction. *Salinger*, 607 F.3d at 80 (*quoting eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) and citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

**B.    GreenPearl is Likely to Succeed on Merits of the Federal
        Unfair Competition Claims Based on Defendant's Unlawful Use of the
        FASHION DIGITAL Trademark**

GreenPearl is likely to succeed on its unfair competition claims.  Section 43(a)(1)

provides a right of action against any person "who, on or in connection with any goods or

services, or any container for goods, uses in commerce any word, term, name, symbol, or

device" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin, sponsorship, or

approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. §

1125(a)(1)(A).  The Lanham Act's protection encompasses unregistered marks, such as

FASHION DIGITAL.  *See New York City Triathlon LLC v. NYC Triathlon Club*, 704 F. Supp.

2d 305, 314, n.1 (S.D.N.Y. 2010); *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 128 n.3 (2d

Cir. 2009).

To prevail under Section 43(a), GreenPearl must show that "'(1) it has a valid trademark

or [service mark] entitled to protection, and (2) the defendant's use of a similar [mark] is likely

to cause confusion among consumers as to the origin of the goods or services.'"  *Rockland

Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 2012 U.S. Dist.

LEXIS 13 1588 (S.D.N.Y. Sept. 11, 2012); *see also Star Industries, Inc. v. Bacardi & Co. Ltd.*,

412 F.3d 373, 381 (2d Cir. 2005); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072,

1077 (2d Cir. 1993).

As set forth below, GreenPearl has not just a reasonable, but a very strong probability of

success on the merits for its Lanham Act claims.  The Second Circuit has observed "[t]here is a

compelling need for injunctive relief especially where the case involves a former licensee

because ... there is an increased danger that consumers will be confused and believe that the

former licensee is still an authorized representative of the trademark holder." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004) (affirming preliminary injunction to owner of unregistered trademark).  That is precisely the case here, where the defendant is akin to a former licensee who pretends to be still authorized to use the FASHION DIGITAL mark. Here, defendant was an independent contractor who provided services to GreenPearl in connection with the production of the FASHION DIGITAL events.  Her role was terminated, yet, she continues to contact sponsors and conference participants claiming to have exclusive rights to the FASHION DIGITAL mark.

### 1. GreenPearl owns the FASHION DIGITAL Mark

GreenPearl is the senior user and has continuously used the FASHION DIGITAL Mark to provide conference services since 2012.  (Slack Decl., ¶¶ 4-5)  Therefore, GreenPearl has established protectable common law trademark rights for the FASHION DIGITAL Mark. Indeed, until defendant's recent actions, no other business has ever used or attempted to use the mark for the same or similar services.  (*Id.*, ¶ 4)

Unlike patent law, rights in trademarks are not gained through discovery or invention of the mark, but only through actual usage.  Many years ago, the Supreme Court pointed out that the "invention" concept of patent law has nothing to do with trademarks:

> The ordinary trademark has no necessary relation to invention or discovery. The trademark recognized by the common law is generally the growth of a considerable period of use, rather than a sudden invention…. The trademark may be and, generally, is, the adoption of something already in existence as the distinctive symbol of the party using it. At common law the exclusive right to it grows out of the use of it, and not its mere adoption…. It requires no fancy or imagination, no genius, no laborious thought. It is simply founded on priority of appropriation.

*Trade-Mark Cases*, 100 U.S. 82, 94, 25 L. Ed. 550 (1879).

To acquire ownership of a trademark, one must actually use the designation as a mark in the sale of goods or services.  No trademark rights accrue to someone who merely selects a designation without actual use of it in the advertising or sale of goods.

The mere fact that a party conceived the idea of a trademark and discussed it with others does not establish priority as of the date of those events.  *Rolley, Inc. v. Younghusband*, 204 F.2d 209, 212, 97 U.S.P.Q. 252 (9th Cir. 1953) ("He who first affixes a trade-mark upon his goods is its owner, not the person who first conceives the idea.. . Thus, mere discussion of the name 'Voodoo' would not create trade-mark rights."); *Gordon Bennett & Associates, Inc. v. Volkswagen of America, Inc.*, 186 U.S.P.Q. 271, 1975 WL 21160 (N.D. Cal. 1975) (conception of mark by an advertising agency and suggestion to potential clients that they use the mark does not constitute trademark use); *La Maur Inc. v. International Pharmaceutical Corporation*, 199 U.S.P.Q. 612, 1978 WL 21258 (T.T.A.B. 1978) (conception of mark and discussion with others does not establish priority); *Invisible, Inc. v. National Broadcasting Co., Inc.*, 212 U.S.P.Q. 576, 1980 WL 30359 (C.D. Cal. 1980), *aff'd*, 673 F.2d 1337 (9th Cir. 1982) (advertising agency, which developed slogan for use by TV station clients, does not have service mark rights; slogan identifies client, not the ad agency); *Arvelo v. American Intern. Ins. Co.*, 875 F. Supp. 95, 101 (D.P.R. 1995), *aff'd*, 66 F.3d 306 (1st Cir. 1995) (publicist who developed "Retail Plus" as a name for a new form of business insurance did not own trademark rights in the name simply because he invented it and presented it to a client); *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328, 47 U.S.P.Q.2d 1300 (M.D. Fla. 1998) ("Thus, the fact that Compton first conceived of the mark 'Via Colori' is irrelevant to his ownership of the mark." Member of Board of Directors of a charitable group who first conceived of and registered a name for a fund raising event was not the owner because the group was the first user of the name as a mark.).

It is a basic rule of trademark law that a concept or an idea for a new trademark is not itself a "trademark." *See generally,* 2 J.T. McCarthy, *McCarthy on Trademarks*, § 16:11(4th ed. 2014). Rights in a trademark are gained through use before the relevant public in the marketplace, not through invention. Thus, a business plan or a concept for a new trademark does not itself create legally recognizable trademark rights. *Id.* This rule is the reason that in most situations, an advertising agency that develops an idea for a designation to be used as a trademark as part of an advertising campaign does not own trademark rights in that designation.

Merely coming up with an idea does not create trademark rights. Rather, the rights belong to the party that transforms the bare concept into a fully-fleshed out service. *Ligotti v. Garofalo*, 562 F. Supp. 2d 204, 225-26 (D.N.H. 2008) ( "[T]his court does not perceive any inherent unfairness in refusing ownership of a mark to a party who came up with an idea for it, but later took a backseat as another party substantially transformed the services in question into those which consumers came to associate with it.").

In the pending case, even allowing for defendant's anticipated contention that she came up with the concept that ultimately became FASHION DIGITAL, she in no way acquired rights to the trademark. The FASHION DIGITAL conferences were put out by GreenPearl. The mark is used prominently on all of GreenPearl's sponsorship agreements and invoices for the FASHION DIGITAL events, and payments are made to GreenPearl, clearly indicating GreenPearl as the source of the FASHION DIGITAL services. (Slack Decl., ¶ 23 & Ex. 1) The defendant was merely an independent contractor to GreenPearl at various times since the inception of the FASHION DIGITAL mark's use. Any claim that she somehow is the owner of the trademark is sheer folly. (*Id.*, ¶ 64)

**2. The FASHION DIGITAL Mark is Distinctive and Protectable**

The FASHION DIGITAL Mark is inherently distinctive and entitled to protection. The distinctiveness of a mark is determined along a continuum of five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 154 (S.D.N.Y. 2011), *aff'd*, No. 11-4535-cv, 2013 U.S. App. LEXIS 1649 (2d Cir. Jan. 25, 2013) (citing *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997)).

FASHION DIGITAL is arbitrary when used in connection with the conference services because it juxtaposes two words that are not ordinarily combined to create a distinctive and protectable trademark. *See Gameologist*, 838 F. Supp. 2d at 154 ("An arbitrary mark has an actual dictionary meaning, but that meaning does not describe the product.. . ."); *see also Sage Realty Corp. v. Sage Grp., Inc.*, 711 F. Supp. 134, 138 (S.D.N.Y. 1989) ("Arbitrary terms have a meaning, but are not usually associated with a particular good or service."). Here, nothing about the FASHION DIGITAL Mark describes or suggests the particular conference services that GreenPearl provides.

At the very least, the FASHION DIGITAL Mark suggests something about the qualities or characteristics of the conference services, namely, that they are targeted to e-commerce retailers and the service providers that market to this industry. Certainly the mark is in no way descriptive of GreenPearl's services provided under the mark. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988) ("GUNG-HO" is suggestive for a marine action figure because it describes elements of the personality attributed to the toy without describing the particular toy itself, "[c]onnecting the fantasy personality to the toy action figure requires imagination"); *Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc.*, 687 F.2d 563, 566-67 (2d Cir. 1982) (PLAYBOY is a suggestive term even though it "may signify the aspirations of

-11-

PLAYBOY's readership [because] it does not describe the product or its contents"); *Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238, 1243-44 (S.D.N.Y. 1987) (PASSION is suggestive for a perfume, since "[i]nstead of describing the product, it describes an emotion the fragrance seeks to induce. Connecting the emotion to the fragrance requires an effort of the imagination.") (internal quotations omitted).

As the FASHION DIGITAL Mark is arbitrary, or at the very least suggestive, it is valid and entitled to protection without proof of secondary meaning. *Gameologist*, 838 F. Supp. 2d at 154 (arbitrary and suggestive marks are entitled to protection without any additional proof of secondary meaning).

The fact that the defendant fraudulently filed a trademark application in the United States Patent and Trademark Office for FASHION DIGITAL (Slack Decl., ¶¶ 60-63 & Ex. 8) reflects that she likewise considers the mark to be distinctive and protectable.

**3.  Defendant's Use of the FASHION DIGITAL Mark has Caused and is Likely to Continue to Cause Confusion as to the Source or Sponsorship of the FASHION DIGITAL Conference Series**

Defendant's unauthorized use of the FASHION DIGITAL mark has caused and is likely to continue to cause confusion as to the source or sponsorship of those services in violation of the Lanham Act.  To determine whether there is a likelihood of confusion, this Court must consider the well-known factors set forth by Judge Friendly in *Polaroid Corp. v. Polaroid Electronics*, 287 F.2d 492, 495 (2d Cir. 1961), the first three of which are generally held to be the most significant.  *See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987).

### a.   Strength of Owner's Mark

As discussed above, the FASHION DIGITAL mark is strong because as an arbitrary, or at the very least suggestive, mark, it is distinctive.  In addition, GreenPearl has been using its mark continuously and exclusively since 2012.  As a coined term, it conveys a singular and unique association with the events GreenPearl has produced under the FASHION DIGITAL mark.

In addition to being conceptually strong, the FASHION DIGITAL mark has commercial strength.  GreenPearl has developed a substantial database of people numbering in the tens of thousands that receive emails about FASHION DIGITAL.  More than 2,000 people have attended the FASHION DIGITAL events since the first one in 2012.  (Slack Decl., ¶ 25)

### b.   Degree of Similarity Between the Two Marks

Defendant has willfully and intentionally adopted GreenPearl's identical mark. Therefore, this factor overwhelmingly favors GreenPearl.

### c.   Proximity of Services in the Marketplace

Defendant intends to attempt to put on the same FASHION DIGITAL conferences that GreenPearl has produced over the past three years and market these same services to the same consumers of GreenPearl's services using the identical FASHION DIGITAL trademark.  For example, on defendant's own LinkedIn page she claims, "I have not parted ways with my company Fashion Digital$^{TM}$.  We are still very much moving forward and excited for the Fashion Digital$^{TM}$ Series 2015."  Moreover, on that page she is actively soliciting inquiries from individuals and companies seeking speaking and sponsorship opportunities at her own unauthorized FASHION DIGITAL event.  (Slack Decl., ¶ 58 & Exhibit 8)

Defendant is promoting an event called Fashion Digital LA for May 6, 2015 in Los Angeles.  GreenPearl's third annual FASHION DIGITAL event in Los Angeles is scheduled for the very next day, May 7, 2014.  It surely is not a coincidence that the defendant selected the day prior for her event because that is geared to confuse and mislead consumers.  (Slack Decl., ¶ 68)

GreenPearl recently became aware that defendant has contacted longtime sponsors of FASHION DIGITAL to claim she owns the brand and trying to enroll them for future programs.  As recently as November 17, 2014, defendant posted on Twitter the following about a prior GreenPearl client:  "Google has confirmed their participation in the LA event for 2015!"  (Slack Decl., ¶ 69 & Ex. 12)  Put simply, defendant is attempting to steal GreenPearl's customers and establish directly competing services under the identical mark.  Thus, this warrants "a finding of the highest degree of competitive proximity."  *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988).

Defendant even contacted the venue that GreenPearl had booked for the next FASHION DIGITAL conference in Los Angeles, and she told the venue to cancel its hold on the space, which the venue did.  (Slack Decl., ¶ 74; Bakal Decl., ¶¶ 1-8)  Clearly, by defendant falsely holding herself out as the source of services provided under the FASHION DIGITAL mark, she is creating confusion and deception in the marketplace, as well as interfering with the independent relationships GreenPearl establishes and maintains with third-party providers.

### d.  Likelihood the Senior User will Bridge the Gap

Where, as here, both parties using the same marks target the same market then there is no gap to bridge, and this factor is not relevant.  *Star Indus. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 387 (2d Cir.2005)

### e.  Evidence of Actual Confusion

Although the Courts have held that "actual confusion need not be shown to prevail under the Lanham Act ... ," GreenPearl has prolific and expansive evidence of such confusion, even at this nascent stage of the case.  *See Savin Corp. v. Savin Group*, 391 F.3d 439, 459 (2d Cir. 2004*); The Marks Org., Inc.*, 412 F. Supp. 2d at 331.  "Evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur." *Morningside Group Ltd. v. Morningside Capital Group LLC*, 182 F.3d 133, 141 (2d Cir. 1999).

As set forth in the Declaration of GreenPearl's CEO, Ryan Slack, longtime sponsors are bewildered by the defendant's claim that she owns the FASHION DIGITAL Mark.  As a direct result of these communications, a sponsor, Demandware, notified GreenPearl and stated, "Just got this from Sandy – **I'm a bit confused as to what is going on.** I know none of this falls to you but **I'm going to hold off on scheduling**  … until this has smoothed over."  (Slack Decl., ¶ 71 & Ex. 14 ) (emphasis added)

On Friday, November 14, 2014, another sponsor, SheerID, contacted GreenPearl to say:

**I'm a little alarmed** by the emails I've been getting from both Ryan and Sandy concerning the future of Fashion Digital.

With Sandy owning the trademark and GreenPearl holding the funds, it feels the show may indeed be in some doubt.

I'm honestly at a loss on how to proceed

(Slack Decl., ¶ 73 & Ex. 17) (emphasis added)  By Monday, November 17, 2014, that same sponsor advised GreenPearl that it was withdrawing its support for the 2015 FASHION DIGITAL show in Los Angeles and has requested a refund of the $10,000 it had paid.  (Slack Decl., ¶ 73)

Another sponsor, Sociomantic, informed GreenPearl that it, too, was confused by the

defendant's competing claims:

> Finally, I was hoping you could provide a bit more color on the current situation of
> Fashion Digital. I read the email from Ryan Slack last week, but have also seen Sandy's
> updates on LinkedIn, etc. stating she is still associated with Fashion Digital as well as the
> fashiondigital.com website and list of 2015 events. Would really appreciate a more
> detailed explanation of the situation as **I'm concerned there will be quite a bit of
> confusion with two event series named identically**, as well as how this will affect
> attendance or participation.

(Slack Decl., ¶ 72 & Ex. 15) (emphasis added)

The Managing Director of UK Operations & Global Marketing Manager for

Affiliatetraction, a sponsor, after receiving emails from defendant asserting her baseless position,

asked GreenPearl, "Who is managing the show?"  (Slack Decl., ¶ 77 & Ex. 19)  Likewise,

Sailthru, another sponsor, understandably is confused and inquired of GreenPearl:

> What's going on over there? Lot's of emails about who owns FD. Who actually
>
> owns it?
>
> Just wondering what the scoop is? Who owns it?

(Slack Decl., ¶ 78 & Ex. 20)

While rarely present, when actual confusion exists, such evidence provides the most

positive and substantial proof of the likelihood of confusion.  *Morningside Group*, 182 F.3d at

141; *Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 921 (S.D.N.Y. 1992).

### f.   Defendant's Bad Faith

Defendant's actions are willful and intentional and clearly directed to harm GreenPearl.

Indeed, given the tenor of the defendant's statements in the State Court Action, in which she

recounts intimate and personal details of her romantic relationship with GreenPearl's CEO Ryan

Slack, the defendant's actions have been taken with the intention to divert business from

-16-

GreenPearl and embarrass Mr. Slack.  At all relevant times, GreenPearl provided conference services under the FASHION DIGITAL Mark, and defendant certainly knew she had no ownership or control to the trademark rights, which, like its own name GreenPearl, belong to the company.  Despite this, defendant has pursued a course of deliberate and malicious conduct to destroy GreenPearl's FASHION DIGITAL conference services through her unfounded assertions that she owns the trademark.  Even by virtue of the defendant's claim in the State Court Action that she is, at best half owner of the "FASHION DIGITAL business," notwithstanding the fact that it is not a separate business entity, defendant must concede that she is not the sole owner of the mark because a trademark cannot exist apart from the goodwill of the business with which it is associated.

The defendant's actions in claiming ownership the FASHION DIGITAL Mark reflect a calculated and deliberate effort to destroy the goodwill of the GreenPearl's FASHION DIGITAL events.  Her actions have been malicious and clearly designed to capitalize unfairly and unlawfully on the tremendous goodwill that GreenPearl has invested and developed for the FASHION DIGITAL Mark

### g.  Quality of Defendant's Services.

While it is too early to assess this factor since defendant has only recently engaged in her course of infringing activities, without the expertise, experience and support of GreenPearl, any attempt by defendant to produce a conference series is not likely to succeed.  Since 2009, GreenPearl has been in the business of putting on conferences.  More than 25,000 senior executives in real estate, finance, and retail have attended GreenPearl events over the past five years.  (Slack Decl., ¶ 10)  Without the logistical support, contacts and execution by GreenPearl,

defendant could not possibly replicate the success of the prior FASHION DIGITAL programs. (*Id.*, ¶ 82)  This factor favors GreenPearl.

### h.  Sophistication of the Relevant Consumer Group

Since the defendant previously was associated with GreenPearl as an independent contractor in connection with its FASHION DIGITAL conferences and briefly served as the "face" of the brand, even the most sophisticated consumers are prone to be confused when defendant contacts them and claims she is still acting on behalf of FASHION DIGITAL. Clearly, by defendant falsely holding herself out as FASHION DIGITAL, she is creating confusion and deception in the marketplace.

As the other evidence of actual confusion reveals, even professionals in the industry are likely to be confused.

* * *

Accordingly, GreenPearl respectfully submits that the *Polaroid* factors weigh heavily in favor of finding of a likelihood of confusion, and that GreenPearl is likely to prevail to on its Lanham Act claims.

### C.  GreenPearl is Likely to Prevail on its State Unfair Competition Claim

Generally, there are two theories of unfair competition that may be alleged under New York law: (1) misappropriation - the taking and use of plaintiff's property to compete against the plaintiff, or (2) "palming off" - the sale of goods or services of one provider as those of another. *See ITC Ltd. v, Punchgini, Inc.,* 9 N.Y.3d 467, 850 N.Y.S.2d 366 (2007).  Plaintiff's property under a misappropriation theory can include goodwill.  *See id.*  Here, defendant committed both forms of unfair competition.  As detailed above, defendant has misappropriated the goodwill that

GreenPearl has developed built and is palming off GreenPearl's goodwill in the FASHION

DIGITAL mark as its own.  This is classic unfair competition.

### D.      Deceptive Trade Practices

GreenPearl is likely to prevail on these claims because it easily meets the test under

General Business Law § 349:  (a) consumer-oriented conduct that is (b) materially misleading

and (c) causes injury to the plaintiff.  N.Y. Gen. Bus. Law § 349(h) (McKinney 2012); *Koch v.*

*Acker, Merrall & Condit. Co.*, 18 N.Y. 3d 940, 944 N.Y. 2d 452 (2012).  As in *Koch*, where a

deceptive trade practices claim was sustained, GreenPearl is likely to prevail on its claim. First,

as shown above, this entire matter concerns deceptive acts or practices by defendant, which the

statute declares unlawful.  Second, defendant has repeatedly made false statements about

GreenPearl, its rights in and to the FASHION DIGITAL Mark and about the ability of

GreenPearl and its CEO to manage and operate the FASHION DIGITAL business.  Third,

defendant has caused tremendous damage to GreenPearl as a direct and proximate result of her

deception. Thus, GreenPearl is likely to prevail on this claim, too.

Likewise, GreenPearl satisfies the standard for relief under General Business Law § 350

based on evidence of injury to the public at large resulting from defendant's advertisements that

are misleading in material respects.

### E.      Unjust Enrichment

GreenPearl is likely to prevail on its claim for unjust enrichment. To make out a *prima*

*facie* claim for unjust enrichment, a plaintiff must show that (a) defendant was enriched, (b) at

plaintiff's expense, and (c) it is against equity and good conscience to permit defendant to retain

what is sought to be recovered.  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y3d 173, 919

N.Y.S.2d 465 (2011).

There can be no doubt that defendant has been unjustly enriched by her misconduct, as outlined above.  She is attempting to hijack a going concern, exert control over valuable intellectual property rights and commercial relationships and stand in the place of the rightful owners of the FASHION DIGITAL Mark.  Indeed, defendant just announced via Twitter that Google has confirmed its participation in defendant's unauthorized event in Los Angeles for 2015 (Slack Decl., ¶ 69), and presumably paid defendant a sponsor fee to which she is not entitled due to her deception.  These unlawful steps have been taken at the expense of GreenPearl.  As a direct result of defendant's misconduct, sponsors have declined to transact business with GreenPearl, and, to the extent defendant has been enriched at the expense of GreenPearl, then it is entitled to the amount by which defendant has been unjustly enriched. Allowing this situation to stand would be unjust.

Thus, GreenPearl is likely to prevail on its unjust enrichment claim.

## F.     Tortious Interference with Economic Advantage

To state a claim for tortious interference with an economic advantage, a plaintiff must demonstrate the following four factors: (1) defendant's knowledge of a business relationship between plaintiff and a third party; (2) the defendant's intentional interference with the relationship; (3) the defendant acted by the use of wrongful means or with the sole purpose of malice; and (4) injury resulted to the business relationship.  *534 E. 11th St. Housing Development Fund Corp. v. Hendrick*, 90 A.D.3d 541, 542 (1st Dep't 2011).  Wrongful means includes physical violence, fraud or misrepresentation, civil suits, and criminal prosecutions, and unlawful economic pressure.  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 191 (2004).

By widely misrepresenting to the consumers GreenPearl's FASHION DIGITAL services defendant's false connection to the FASHION DIGITAL mark as the sole owner, despite

knowledge to the contrary and with an intend to deceive, defendant has caused injury to GreenPearl.

**G.    Defendant's Misconduct has Caused and Will Continue to Cause Irreparable Harm if the Preliminary Injunctive Relief Sought by GreenPearl is not Granted**

Defendant's misconduct, as detailed above, has caused and will continue to cause irreparable harm if the preliminary injunctive relief sought by GreenPearl is not granted.  The quantum of proof here far exceeds the standard now required by the line of cases following the Supreme Court's decisions in *eBay* and *Winter*.

The Second Circuit has held that damage to reputation and good will constitutes irreparable harm.  *Reuters Ltd. v. United Press Int'l Inc.*, 903 F. 2d 904, 907-08 (2d Cir. 1990); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F. 2d 438, 444-45 (2d Cir. 1977).  The Second Circuit has further recognized that the "threatened loss of good will and customers, both present and potential, ...could [not] be rectified by monetary damages."  *Jacobson & Co.*, 548 F. 2d at 445; *see also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (finding irreparable harm because "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822-23 (SD.N.Y. 1992) (finding irreparable harm where "[plaintiff's] reputation among customers and potential customers will be severely damaged ... [and the injury] is both imminent and 'incapable of being fully remedied by monetary damages'''") (quoting *Reuters Ltd. v. United Press Int'l. Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)).

In the case at bar, GreenPearl has been irreparably harmed and will continue to be irreparably harmed as a result of defendant's misconduct and malicious activities.  Quite simply,

GreenPearl faces enormous obstacles in sustaining the FASHION DIGITAL conference events if this motion is not granted.  As the evidence already demonstrates, conference sponsors do not want to become embroiled in conflict or controversy.   To wit, as a direct result of the confusion caused by defendant, SheerID withdrew as a sponsor of FASHION DIGITAL Los Angeles and has requested a refund, Demandware is holding off on making any decisions until the dispute is resolved and Sociomantic is concerned and confused, as are others.  (Slack Decl., ¶¶ 71-79)

The goodwill of GreenPearl's FASHION DIGITAL mark depends on the generosity and trust of sponsors.  (*Id.*, ¶ 24)  In view of the sponsors that already have withdrawn their support, that goodwill will be severely impaired, if not destroyed, unless an injunction is granted.

As it stands now, GreenPearl's business relationships are being adversely impacted on a daily basis, its trademark rights are being diluted and damaged and it has proven to be extremely difficult and, in the case of SheerID, impossible to staunch the bleeding caused by defendant's misconduct.  Money damages are not adequate to address this harm.  Without its business relationships and without control over its brand, FASHION DIGITAL cannot remain viable. Unless a preliminary injunction is granted, other sponsors also will walk away from GreenPearl. They will not have the patience or stomach to sit by while litigation takes place. Rather, they will find spend their funds on other sponsorship opportunities in lieu of the FASHION DIGITAL conferences.  That is quintessential irreparable harm.

Therefore, this case cries out for equitable relief.

### H.     The Balance of Equities Tips Decidedly in Favor of GreenPearl

The balance of equities tips decidedly in favor of GreenPearl because it has done nothing other than build a business.  To the extent defendant may claim Mr. Slack was not a model

boyfriend, that is utterly irrelevant to the pending dispute over the rights to the FASHION

DIGITAL trademark.

GreenPearl has built a brand, established positive commercial relationships and served

the needs of its demanding customer base.  With a blast of emails, defendant is trying to destroy

all the goodwill that GreenPearl has attained for the FASHION DIGITAL mark.

Defendant is under no non-compete restrictions.  She is free to operate her own

conference series and direct it to any market segment she desires, including, e-commerce retailer

and vendors.  She cannot, however, use GreenPearl's FASHION DIGITAL mark, or any

confusingly similar mark, because it does not belong to her.  Since GreenPearl is the entity that

used the mark, it holds all rights to the trademark.

There is no justification for defendant's actions, and her misconduct must be stopped.

Otherwise, the valuable goodwill attributable to the FASHION DIGITAL mark will be

irreparably harmed.

Thus, the balance of equities tips undoubtedly and decidedly in favor of GreenPearl.

**I.     The Public Will Not Be Disserved by Granting GreenPearl's Motion**

The public certainly will suffer no disservice if GreenPearl's motion is granted.  On the

contrary, "[t]he consuming public has a protectable interest in being free from confusion,

deception, and mistake."  *US Polo Ass 'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515,

541 (S.D.N.Y. 2011).  Professionals in the e-commerce and apparel retail industry as well as the

service providers to that industry have come to recognize FASHION DIGITAL as a singular and

distinctive event that provides a valuable need to this field.  (Slack Decl., ¶ 81)  These consumers

should be protected from the malicious, deliberate and willful confusion and deception that the

defendant is perpetuating.

## II.     GREENPEARL IS ENTITLED TO A TEMPORARY RESTRAINING ORDER

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of demands for a preliminary injunction."  *Pan American World Airways, Inc., v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 843 (2d Cir. 1962).  The Second Circuit, following the holding of the Supreme Court in *Granny Goose Foods Inc. v. Teamsters*, 415 U.S. 423 (974), observed in *In re Vuitton et Fils S.A.*, 606 F. 2d. 1 (2d Cir. 1979), that a temporary restraining order is appropriate where immediate, irreparable injury is threatened.  *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979).

The immediate harm to GreenPearl is clear. As demonstrated at length above, GreenPearl's FASHION DIGITAL event series will not survive if this Court does not issue a temporary restraining order restoring GreenPearl to the position it held prior to defendant's acts of misconduct.  Absent immediate injunctive relief to GreenPearl, defendant will accelerate her campaign to destroy GreenPearl's FASHION DIGITAL services and delay the return to the position it was in before defendant embarked on her scheme of deception and destruction.

Without an immediate order return to the *status quo ante*, GreenPearl and its FASHION DIGITAL mark will be significantly impaired because defendant has continued to contact and promote confusion among consumers, namely, FASHION DIGITAL sponsors, with impunity.

Under these circumstances, this Court should use its power to issue a temporary restraining order and restore the *status quo* pending a preliminary injunction hearing, since GreenPearl will sustain immediate and irreparable harm in the absence of such an order. See *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1124 (2d Cir. 1989).  As discussed above, GreenPearl has shown a strong likelihood of success on the merits, the need for equitable relief, irreparable harm, and the absence of any harm to the public.  A temporary restraining

-24-

order is therefore necessary to ensure that GreenPearl can survive to litigate its motion for a preliminary injunction and, ultimately, the lawsuit itself.

### III.     GREENPEARL SHOULD BE GRANTED EXPEDITED DISCOVERY

GreenPearl should be granted expedited discovery to ensure that it is prepared for the preliminary injunction hearing in this matter.  Such relief may be granted if good cause is shown. *Fed. R. Civ. P.* 26; *Mitra v. State Bank of India*, 2005 U.S. Dist. LEXIS 19138, at *26 (S.D.N.Y. Sept. 6, 2005).  Here, there is an especially strong need for expedited discovery because defendant apparently has contacted untold numbers of GreenPearl's previous sponsors and countless other past participants, including speakers and panelists that have presented at the conferences, as well as other consumers of GreenPearl's FASHION DIGITAL conference services.  GreenPearl needs to learn the extent of harm that defendant has caused by these communications, particularly, since they may become potential witnesses in this matter.

Accordingly, GreenPearl respectfully requests that this Court permit it to take expedited discovery, as detailed in Exhibit 6 of the Jacobson Declaration.

## CONCLUSION

For the reasons set forth above, GreenPearl respectfully requests that the Court granted

the relief requested in all respects.

Dated: November 21, 2014
      New York, New York

                                        Respectfully submitted,

                                        **COLUCCI & UMANS**

                                By: */Richard P. Jacobson/*
                                          Richard P. Jacobson
                                          COLUCCI & UMANS
                                          218 East 50th Street
                                          New York, New York 10022-6018
                                          Telephone (212) 935-5700
                                          rjacobson@colucci-umans.com

                                        Attorneys for Plaintiff, MDB LLC d/b/a
                                        GreenPearl Events

Of Counsel:

Russell E. Adler
Law Offices of Russell E. Adler PLLC
370 Lexington Avenue, Suite 1012
New York, New York 10017
russ@radlerlawpllc.com
work: 212.867.9711
mobile: 917.913.6151
fax: 888.636.2303